**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **BILLY GLENN COOPER, et al.,** | ) |
| | ) |
|       **Plaintiffs,** | ) |
| | )  **CIVIL ACTION NUMBER:** |
| **v.** | )  **12- cv-583-WS-M** |
| | ) |
| **INTERNATIONAL PAPER COMPANY, et al.,** | ) |
| | ) |
|       **Defendants.** | ) |

---

**PLAINTIFFS' OPPOSITION IN RESPONSE TO DEFEDANTS' MOTION
TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

---

### I.  INTRODUCTION

Plaintiffs file this Opposition in Response to Defendants', Harris, Bruce, and Parrish (hereinafter "Individual Defendants"), Motion to Dismiss and Incorporated Memorandum of Law.  The grounds for alleged dismissal asserted in the Individual Defendants' Motion to Dismiss are that Plaintiffs have failed to state a claim upon which relief may be granted because their First Amended Complaint "is utterly devoid of factual allegations that could give rise to a claim against these employees."  Defendants' Motion to Dismiss, p. 2, (Doc. 11).

This argument by the Individual Defendants is disingenuous at best given that numerous factual allegations contained within Plaintiffs' First Amended

Complaint that speak directly to the theory upon which Plaintiffs intend to recover against the Individual Defendants.  These Facts were not cited or addressed in the Individual Defendants' Motion to Dismiss.

Further, the Individual Defendants make the argument that "the Amended Complaint does not identify a single action by Defendants Harris, Bruce, or Parrish that cause any harm to Plaintiffs."  Defendants' Motion to Dismiss, p. 2, (Doc. 11).  In an effort to make this argument work, the Individual Defendants cite Alabama Law for the proposition that they may not be found individually liable for the torts committed while in the line and scope of their employment with International Paper (hereinafter "IP").  Needless to say, Alabama Law allows, and the facts in this case will require, that the Individual Defendants be parties to this lawsuit for liability pertaining to their actions/inactions as decision makers and/or employees of International Paper at the Selma Plant acting within the line and scope of their employment that contributed to damaging Plaintiffs as set out in their First Amended Complaint.

## II. FACTS

### A. Procedural History

This lawsuit was filed on July 20, 2012.  Complaint, (Doc. 1-1).  Prior to receiving an answer, Plaintiffs filed their First Amended Complaint on August 29, 2012.  First Amended Complaint, (Doc. 1-1).  On September 12, 2012,

International Paper filed a Notice of Removal in this case alleging that, despite no diversity and damages alleged well in excess of the statutory required amount, that a "federal issue" allowed federal jurisdiction.  Notice of Removal, (Doc. 1).  The Individual Defendants filed this Motion to Dismiss on September 19, 2012.  Motion to Dismiss, (Doc. 11).  Plaintiffs contemporaneously file this Response in Opposition to Defendants' Motion to Dismiss and a Motion for Remand.

### B. Allegations of the Complaint

Paragraph 1 of Plaintiffs' First Amended Complaint alleges:

> 1. This lawsuit is centered around the operation of a paper manufacturing facility located in Selma, Alabama (hereinafter the "Facility") from which tons of hazardous substances, pollutants, contaminants, and other toxic and harmful materials are, and have for years been, continuously released into the environment.  For the purposes of this Complaint, the phrase "released into the environment" shall include, without limitation, releases into the atmosphere, releases into the waterways and watershed, and releases onto and into the soil.

Complaint, p. 1, ¶1 (Doc. 1-1).

Paragraphs 8 through 11 identify each Defendant in this case, including the Individual Defendants:

> 8. Defendant, International Paper Company, is a global corporation organized and existing under New York law and having its principal place of business located in Tennessee (hereinafter "International Paper").   Although it has no principal place of business in Alabama, International Paper is authorized to operate and conduct business in Alabama (Alabama No. F/C 853-624), and, in fact, actively operates the Facility.

9. Defendant, RUSSELL HARRIS, a resident of Tennessee, was the previous Manager of the Plant. **He was responsible for maintaining and operating the Plant and was responsible for continuing to commit the nuisance and/or negligence and/or wantonness and/or trespass described herein which have caused these Property Plaintiffs' damages.** He was also responsible for the investigation, payment, and resolution of property damage claims local community members made against the mill.

10. Defendant, JIM BRUCE, a resident of Alabama, is the present Plant Manager of the subject Plant. **He is responsible for maintaining and/or operating the Plant and is responsible for continuing to commit the nuisance and/or negligence and/or wantonness and/or trespass described herein which have caused these Property Plaintiffs' damages.** He is also responsible for the investigation, payment, and resolution of property damage claims local community members made against the mill.

11. Defendant, DONNIE PARRISH a resident of Alabama, is, upon information and belief, the present Environmental Manager of the subject plant. **He is responsible for maintaining and/or operating the Plant's waste clarifiers, and is, therefore, responsible for continuing to commit the nuisance and/or negligence and/or wantonness and/or trespass described herein which have caused these Property Plaintiffs' damage.**

First Amended Complaint, pp. 3-4 ¶¶8-11 (Doc. 1-1)(emphasis added).

In Plaintiffs' First Amended Complaint, Plaintiffs set out numerous factual

allegations, including but not limited to, as follows:

21. International Paper regularly and periodically caused the Facility to release Hazardous Substances, Particulate Matter, and Noxious Odors into the environment.

22. The actions of International Paper and **its employees, agents, officers, and representatives**, constituted violations of laws intended to protect Plaintiffs from the effects of the Hazardous Substances, Particulate Matter, and Noxious Odors, including, without limitation, the following laws:

a.      THE RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. §§ 6901, *et seq*. (1976), as amended, as described in 40 CFR Parts 239-282 and in ADEM Admin. Code R. 335-13 and 335-14 (hereinafter "RCRA").

b.      THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT, 42 U.S.C. §§ 9601, *et seq*. (1980) as amended, as described in 40 CFR Parts 370 – 374 (hereinafter "CERCLA").

c.      SUPERFUND AMENDMENT AND REAUTHORIZATION ACT OF 1986, Pub. L. No. 99-499 (codified as amended in scattered sections of the UNITED STATES CODE), as described in 40 CFR Parts 370 – 374 (hereinafter "SARA").  This legislation reauthorized CERCLA to continue cleanup activities around the country.

d.      THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq*. (1986), as amended, as described in 40 CFR Part 370.  Also known as Title III of SARA, this legislation was enacted to help local communities protect public health, safety, and the environment from chemical hazards.

e.      OSHA Hazardous Waste Operations and Emergency Response Standard, which applies to all facilities and situations in which workers are exposed to physical or chemical hazards during activities such as cleaning up hazardous waste sites or responding to emergencies involving releases of hazardous materials or wastes under CERCLA or RCRA, as described in 29 CFR §§ 1910.120 and 1926.65.

5

f.    THE CLEAN AIR ACT, 42 U.S.C. §§ 7401, *et seq.* (1970), as amended, as described in 40 CFR Parts 50 – 97, and in ADEM Admin. Code R. 335-3 and in the JCDH-APCP[1] Rules and Regulations.

g.    THE CLEAN WATER ACT, 33 USCS §§ 1251, *et seq.* (1972), as amended, as described in 40 CFR Parts 100 – 149 and in ADEM Admin. Code R. 3356-6.

h.    THE SOLID WASTE DISPOSAL ACT, 42 USCS §§ 6901 *et seq.*;/THE ALABAMA AIR POLLUTION CONTROL ACT OF 1971, *CODE OF ALABAMA* §§ 22-28-1, *et seq.*;

i.    THE ALABAMA HAZARDOUS WASTES MANAGEMENT AND MINIMIZATION ACT, *CODE OF ALABAMA* §§ 22-30-1, *et seq.*;

j.    THE ALABAMA SOLID WASTES DISPOSAL ACT, *CODE OF ALABAMA* §§ 22-27-1, *et seq.*;

k.    THE ALABAMA ENVIRONMENTAL MANAGEMENT ACT, *CODE OF ALABAMA* §§ 22-22A-1, *et seq.*;

l.    THE ALABAMA WATER POLLUTION CONTROL ACT, *CODE OF ALABAMA* §§ 22-22-1, *et seq.*;

m.    THE ALABAMA UNDERGROUND STORAGE TANK AND WELLHEAD PROTECTION ACT OF 1988, *CODE OF ALABAMA* §§ 22-36-1, *et seq.*;

n.    ADEM Regulation 335-3-3-.05(19)(c);

o.    ADEM Regulation 335-3-4-.02(1) and (2);

p.    ADEM Regulation 335-3-14-.01(1)(b);

q.    ADEM Regulation 335-14-5;/ADEM Regulation 335-14-7-.08;

---

[1].    "JCDH-APCP" refers to the State of Alabama Jefferson County Department of Health Air Pollution Control Program.

      r.      ADEM Regulation 335-14-7-.08, subpart H; and

      s.      ADEM Regulation 335-14-X.

23. The actions of Defendants in violation of the foregoing laws and regulations constitute violations of duties imposed by law and intended to prevent harm to Plaintiffs and other persons similarly situated.

24. At all times pertinent hereto, Defendants knew, or should have known, that the Facility was releasing Hazardous Substances, Particulate Matter, and Noxious Odors into the environment at a level that was unlawful and at a level that could cause injury to persons and Property.

25. At all times pertinent hereto, Defendants knew, or should have known, that the operations, waste management, and emissions controls at the Facility have been environmentally unsound and that, as a result, Hazardous Substances, Particulate Matter, and Noxious Odors have been released into the environment and onto Plaintiffs and their Property.

26. International Paper was required to report the volume of Hazardous Substances, Particulate Matter, and Noxious Odors that were being released into the environment from the Facility, but for many years International Paper underreported those releases.  International Paper knew, or should have known, that it was underreporting the volume of Hazardous Substances, Particulate Matter, and Noxious Odors that were being released into the environment from the Facility.

27. Plaintiffs were among the intended beneficiaries of International Paper's duty to report the volume of Hazardous Substances, Particulate Matter, and Noxious Odors that were being released into the environment from the Facility.

28. Exposure to the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility are known to cause, promote, and accelerate diseases and health conditions in humans.

29. At all times pertinent hereto, Defendants knew or should have known that the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment could, and in fact, did, directly and proximately cause, promote, and accelerate diseases and health conditions in humans.

30. The Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility have, in fact, directly and proximately caused, promoted, and accelerated diseases and health conditions in Plaintiffs.

31. The Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility have been deposited onto and contaminated Plaintiffs' Property.

32. At all times pertinent hereto, Defendants knew or should have known that the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment could, and in fact, did, directly and proximately cause damage to Property in the community surrounding the Facility.

First Amended Complaint, pp. 6-9 ¶¶28-32 (Doc. 1-1).

Count I, alleging trespass states as follows:

40. International Paper's continuous release of the Hazardous Substances, Particulate Matter, and Noxious Odors into the environment resulted in the contamination of Plaintiffs' Property and constituted a continuous trespass onto Plaintiffs' Property.

41. International Paper never sought or obtained Plaintiffs' consent to enter onto their Property or to permit the Hazardous Substances, Particulate Matter, and Noxious Odors to invade Plaintiffs' properties.

42. The entry and presence of the Hazardous Substances, Particulate Matter, and Noxious Odors onto Plaintiffs' Property is unauthorized.

43. As a direct and proximate consequence of the continuous trespass onto their Property, Plaintiffs have suffered and continue to suffer injury to their Property, deprivation of the reasonable use and value of their Property, a decrease in the value of their Property, the nuisance and inconvenience of having to cope with the Noxious Odors, and other damages.

First Amended Complaint, p. 11 ¶¶40-43 (Doc. 1-1).

Count II alleges public nuisance against all Defendants and states as follows:

50. The actions of Defendants in causing the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility subverted public order, decency, and morals, and further constituted an obstruction of public rights.

First Amended Complaint, p. 12 ¶50 (Doc. 1-1).

Count III alleges private nuisance and states as follows:

59. Defendants have invaded and interfered with, and are invading and interfering with, Plaintiffs' through the release of Hazardous Substances, Particulate Matter, and Noxious Odors into the environment and onto Plaintiffs' Property and persons, thereby resulting in a private nuisance.

First Amended Complaint, p. 14 ¶59 (Doc. 1-1).

Count IV alleges negligence and states as follows:

69. Defendants breached the duties of care that they owed to Plaintiffs.

70. As a proximate and foreseeable consequence of the breach of the duties of care owed by Defendants, Plaintiffs suffered injury.

71. As a result of this breach, and as a direct and proximate consequence of Defendants' negligence, Plaintiffs' health has been jeopardized, and Plaintiffs have been prevented from fully evaluating the situation, previously asserting their legal rights to protection of their persons and properties, and taking measures to minimize their potential exposure to hazardous substances.

First Amended Complaint, p. 15 ¶¶69-71 (Doc. 1-1).

Count V alleges wantonness and states as follows:

75. Defendants owed duties of care to Plaintiffs from the commencement of operations of the Facility and continuing through the present.

76. Defendants breached the duties of care that it owed to Plaintiffs.

77. The actions of Defendants were willful and wanton and exhibit a reckless disregard for the lives, health, and Property of Plaintiffs and the population of the Selma community.

78. As a proximate and foreseeable consequence of the breach of the duties of care owed by Defendants, Plaintiffs suffered injury.

First Amended Complaint, pp. 16-17 ¶¶75-78 (Doc. 1-1).

Count VI alleges negligence per se and states as follows:

82. Defendants owed a duty of care to Plaintiffs from the commencement of operations of the Facility and continuing through the present.

83. International Paper breached the duty of care owed to Plaintiffs.

84. The actions of Defendants constituted violations of laws intended to protect Plaintiffs, including, without limitation, THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq.* (1986), as amended, as described in 40 CFR Part 370, and all of the other laws described above.

85. The actions of Defendants were willful and wanton and exhibit a reckless disregard for the lives, health, and Property of Plaintiffs and the population of the Selma community.

86. As a proximate and foreseeable consequence of the breach of the duties of care owed by Defendants, Plaintiffs suffered injury.

First Amended Complaint, p. 18 ¶¶82-86 (Doc. 1-1).

Count VII alleges fraudulent suppression and Plaintiffs' First

Amended Complaint states as follows:

92. Defendants breached their duty of disclosure owed to Plaintiffs in a number of ways, including, without limitation, the following:

A. Failing to warn and advise Plaintiffs and other members of the Selma Community of the dangers caused by the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment.  Defendants knew or should have known that the release of Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment has endangered Plaintiffs and others by invading their homes, Property, breathing zone, schools and the places they occupy;

B. Failing to provide Plaintiffs and others with knowledge as to what would be a reasonable, safe, and sufficient protection, if

any, to safeguard Plaintiffs and others from harm and life-threatening injuries as a result of exposure to Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment; and,

C. Failing to disclose that International Paper was releasing Hazardous Substances, Particulate Matter, and Noxious Odors from the Facility into the environment and that these Hazardous Substances, Particulate Matter, and Noxious Odors were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

93. These failures of Defendants to disclose to Plaintiffs such information is in direct violation of federal and state law and constitutes a concealment of material facts which should have been made known to Plaintiffs.  This concealment of and/or failure to report the material facts to Plaintiffs amounts to fraudulent suppression.

First Amended Complaint, p. 19-20 ¶¶92-93 (Doc. 1-1).

## C. This Issue Has Been Decided on Multiple Occasions in the Past.

The issue of whether individual plant managers and/or safety directors at paper mills can be held individually liable for claims such as those in this case has been addressed by this Court on numerous occasions in the past.  *Gladney v. Weyerhauser USA, Inc., Pine Hill Ops.*, Case 2:06-cv-00212-KD-C, Order of September 5, 2006 (Doc. 17) at pp. 11-15, attached as Exhibit A to this brief; A*twood v. Weyerhauser USA, Inc., Pine Hill Ops.*, Case 2:09-cv-00379-CG-N, Report and Recommendation of September 25, 2009 (Doc. 53) at pp. 5-12, attached as Exhibit B to this brief; *Atwood v. Weyerhauser USA, Inc., Pine Hill*

*Ops.*, Case 2:09-cv-00379-CG-N, Order of February 26, 2010 (Doc. 70) at p. 8,

attached as Exhibit C to this brief; *Morris v. Shawcor LTD.*, Case 1:04-cv-00036-

C, Order of April, 8, 2004 (Doc. 29) at pp. 24-29, attached as Exhibit D to this

brief; *Holloway v. Morrow*, Case 2:07-cv-00839-WS-M, Order of February 11,

2008 (Doc. 10) at pp. 9-11, attached as Exhibit E to this brief.  Although each of

these Orders involved a Motion for Remand, the holding by the Courts involved

exactly the issue upon which this Motion rests.  Each of the foregoing Orders

found that the individual defendants were subject to potential liability for their role

in managing/supervising the actions and inactions of their respective companies.

See Exhibits A – E.

### III.   LEGAL AUTHORITY

#### A.   Plaintiffs' First Amended Complaint contains ample specificity on all fronts.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief."  "The pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Ashcroft v. Iqbali,* 556 U.S. 662, 678 (2009)(*citing Bell

Atlantic Corp. v.  Towmbly*, 550 U.S. 544 (2007)).  "Specific facts are not

necessary; the statement need only 'give the defendant fair notice of what the …

claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89,

93 (2007)(*citing Towmbly, supra,* at 555).

> "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  The standard is one of 'plausible grounds to infer.'  The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element.  It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'"

*Watts v. Florida Intern. University*, 495 F.3d 1289, 1296-97 (11th Cir. 2007)(*Citing Towmbly, supra*).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint when the plaintiff has failed to state a claim upon which relief may be granted.  "A Rule 12(b)(6) motion questions the legal sufficiency  of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set fourth in the complaint are true."  *See United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990)."  *Cobb v. Marshall*, 481 F.Supp.2d 1248, 1253 (M.D.Ala. 2007).  When discussing a Rule 12(b)(6) motion to dismiss, it is clearly established that "'the pleadings are construed broadly and that the allegations in the complaint are viewed in the light most favorable to the plaintiff." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)(Citations omitted).

14

"On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant 'sustains a very high burden.'"  *Vaughan Regional Medical Center v. Smith*, 916 F.Supp. 1142, 1143 (M.D.Ala. 1995)(*citing Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)). Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cobb*, 481 F. Supp. 2d 1248, (M.D.Ala. 2007)(*citing In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996)).

> **B.**    **Alabama Law supports individual liability of the Individual Defendants in this case.**

"A corporation is a legal entity, an artificial person, and can only act through agents."  *Townsend Ford, Inc. v. Auto-Owners Ins. Co.,* 656 So.2d 360, 363 (Ala. 1995).  "It is thoroughly well settled that a person is personally liable for all torts committed by him, consisting in misfeasance – as fraud, conversion, acts done negligently, etc. – notwithstanding he may have acted as the agent or under directions of another."  *United Merchants & Manufacturers, Inc. v. Sanders,* 508 So.2d 689, 691 (Ala. 1987).

In *Crigler v. Salac,* 438 So. 2d 1375 (Ala. 1983), the Alabama Supreme Court affirmed the judgment against Mr. Crigler imposing personal liability upon him.  *Crigler* relies largely upon a long quotation from *Fletcher's Cycolpedia of Corporations*, §1135, at 202-203 (1975), including the following passage:

> "It is thoroughly well settled that a man is personally liable for all torts committed by him, consisting in misfeasance – as fraud, conversion, acts done negligently, etc. - - notwithstanding he may have acted as the agent or under directions of another.  And this is true to the full extent as to torts committed by the officers or agents of a corporation in the management of its affairs. The fact that the circumstances are such as to render the corporation liable is altogether immaterial… Corporate officers are liable for their torts, although committed when acting officially.  In other words, corporate officers, charged in law with affirmative official responsibility in the management and control of corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval."

*Crigler,* 438 So.2d at 1380, quoting *Fletcher's Cyclopedia of Corporations,* §1135, at 202-03 (1975).

In *Bethel v. Thorn,* 757 So.2d 1154, 1158 (Ala. 1999), the Court repeated these principles:

> Bethel argues that Thorn, as president of Diesel, can be held individually liable for the fraudulent acts or omissions he personally committed in his capacity as corporate officer.  We agree that this is a correct statement of law.  See *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.,* 496 Co. 2d 774, 775 (Ala.1986)("In Alabama, the general rule is that officers <u>or employees</u> of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."); *Crigler v. Salac,* 438 So.2d 1375, 13779-80 (Ala. 1983) ("This rule <u>does not depend on the same grounds as 'piercing the corporate veil'</u>…").

757 So.2d at 1158 (emphasis added).

**C.     This Court has already addressed the issue whether individual defendants, more specifically mill managers and safety managers of paper plants, may be found individually liable under Alabama Law.**

In *Michelle N. Morris, et al. v. ShawCor Ltd.,* CA04-0036-C, Southern District of Alabama, April 8, 2004, Judge Cassidy was confronted with nearly identical assertions as those in this case.   Judge Cassady quoted from *United Merchants,* supra, 508 So.2d at 691: "[C]orporate officers … cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval."

Both *Gladney* and *Atwood* are also cases involving identical allegations to that of this case.   See Exhibits A and B.   In each case, the issue before the Court was whether individual plant managers and/or shift managers could be held personally liable for the actions such as those alleged in Plaintiffs' First Amended Complaint.   *Id.*

In *Holloway v. Morrow*, Case 2:07-cv-00839-WS-M, this Court stated that "Alabama Law clearly establishes that if the employee defendants personally participated in the torts alleged by plaintiff they can be held personally liable under Alabama Law."   Exhibit A at p. 13, ¶2.   This Court analyzed the extent to which a plaintiff must allege "personal participation" or contribution to the alleged tort of

the corporation for which personal liability is claimed.  See Exhibit E at p. 10, ¶1.

To that end, this Court found that personal participation was "duly alleged" when

plaintiff specifically alleged in her Complaint that it was the individual defendant's

job to "maintain the aisles of the Wal-Mart store in a safe condition, and that he

failed to discharge that responsibility."  *Id.*

## IV.    Analysis

Just as the plaintiff in *Holloway* set out the specific job duties of the

individual defendant, there is no question that Plaintiffs have adequately and "duly

alleged" personal participation and potential liability in the Individual Defendants'

specific roles within the line and scope of their employment with IP.  Specifically

Plaintiffs' alleged:

> 8. Defendant, RUSSELL HARRIS, a resident of Tennessee,
> was the previous Manager of the Plant.  **He was responsible for
> maintaining and operating the Plant and was responsible for
> continuing to commit the nuisance and/or negligence and/or
> wantonness and/or trespass described herein which have
> caused these Property Plaintiffs' damages.**  He was also
> responsible for the investigation, payment, and resolution of
> property damage claims local community members made
> against the mill.
>
> 9.  Defendant, JIM BRUCE, a resident of Alabama, is the
> present Plant Manager of the subject Plant.  **He is responsible
> for maintaining and/or operating the Plant and is
> responsible for continuing to commit the nuisance and/or
> negligence and/or wantonness and/or trespass described
> herein which have caused these Property Plaintiffs'
> damages.**  He is also responsible for the investigation, payment,

and resolution of property damage claims local community members made against the mill.

10. Defendant, DONNIE PARRISH a resident of Alabama, is, upon information and belief, the present Environmental Manager of the subject plant. **He is responsible for maintaining and/or operating the Plant's waste clarifiers, and is, therefore, responsible for continuing to commit the nuisance and/or negligence and/or wantonness and/or trespass described herein which have caused these Property Plaintiffs' damage.**

First Amended Complaint, pp. 3-4 ¶¶8-11 (Doc. 1-1)(emphasis added).

Apparently, the Individual Defendants would like to ignore the factual allegations preceding and leading to the counts and allegations in Plaintiffs' First Amended Complaint that most certainly constitute the sufficient "duly alleged" factual allegations against the Individual Defendants.  See generally Plaintiffs' First Amended Complaint.

The Individual Defendants' argument that "the Amended Complaint does not identify a single action by Defendants Harris, Bruce or Parrish that caused any harm to the Plaintiffs…." is utterly untrue.  Plaintiffs certainly made allegations both factually and legally, supporting each element of their causes of action including those that Defendants Harris, Bruce, and Parrish personally participated in the tortuous conduct of their employer, IP.  First Amended Complaint, pp. 3-4, ¶¶ 8-11, (Doc. 1-1); See Exhibit E; First Amended Complaint, pp. 6-9 ¶¶28-32

(Doc. 1-1).  Based on the foregoing, the Individual Defendants' Motion to Dismiss is due to be denied.

## V.    Conclusion

Plaintiffs' First Amended Complaint adequately specifies the factual allegations and claims upon which are made against the Individual Defendants. Each of these Individual Defendants are alleged to have contributorily committed torts while in the line and scope of their employment with IP that have caused personal injury and/or property damage to Plaintiffs.  Given the specificity with which Plaintiffs' First Amended Complaint sets out the factual allegations, counts of alleged liability, and clear Alabama law pertaining to the individual liability of the plant managers and environmental safety employees in this exact situation, the Individual Defendants' Motion to Dismiss is due to be denied.

Respectfully submitted,

/s/ D. Brett Turnbull
D. Brett Turnbull
Kenneth E. Riley
Attorneys for Plaintiffs

OF COUNSEL:
**FARRIS, RILEY & PITT, L.L.P.**
2025 Third Avenue North
The Massey Building, Suite 400
Birmingham, Alabama 35203
(205) 324-1212
(205) 324-1255 Facsimile
kriley@frplegal.com
bturnbull@frplegal.com

Phillip Henry Pitts
Rickman E. Williams
Thomas C. Atchison
**PITTS, PITTS & WILLIAMS**
P. O. Box 527
Selman, AL 36702-0527
(334) 875-7213
(334) 874-8218 Facsimile
tatchison@pittsandpitts.com
rwilliams@pittsandpitts.com
hpitts@pittsandpitts.com

## CERTIFICATE OF SERVICE

This is to certify that on October 12, 2012, a copy of the within and foregoing was served on all counsel of record via electronic filing as follows:

**Daniel W. Nelson, Esq.**
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, NW
Washington, DC 20036

**Tabor R. Novak, Jr.**
**BALL, BALL, MATTHEWS & NOVAK, P.A.**
2000 Interstate Park, Suite 204
Montgomery, AL 36102

**William Douglas Montgomery, Jr.**
**BALL, BALL, MATTHEWS & NOVAK, P.A.**
107 St. Francis Street, Suite 1590
Mobile, AL 36602

 /s/ D. Brett Turnbull
OF COUNSEL

21