# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| BILLY GLENN COOPER, et al., | : |
|     Plaintiffs, | : |
| v. | :    CA 2:12-00583-C |
| INTERNATIONAL PAPER COMPANY, et al., | :    **PUBLISH** |
|     Defendants. | : |

## MEMORANDUM OPINION AND ORDER

A motion to dismiss (Docs. 11, 12) and a motion to remand (Doc. 18) have been filed in this matter, removed from the Circuit Court of Dallas County, Alabama on September 12, 2012 (*see* Doc. 1) and on the undersigned's docket pursuant to 28 U.S.C. § 636(c) (*see* Docs. 17, 20, 22).[1]  Both motions have been fully briefed (*see* Docs. 19, 23, 27,

---

[1] In a civil matter that is not initially randomly assigned to a United States Magistrate Judge, such as this one, it is the practice of this Court to inform the parties of the availability of consent to a Magistrate Judge when the Clerk of Court enters the preliminary scheduling order (*see, e.g.*, Doc. 8); in a case that ***is*** randomly assigned to a Magistrate Judge in the first instance, the parties are notified of the assignment and given the option to request reassignment to a United States District Judge.  The parties in this case filed the Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. 17)—which does not specify a particular Magistrate Judge—on October 12, 2012, and Judge Steele ordered the case referred to Judge Milling on October 15, 2012.  Because the consent form completed by the parties does not specify a particular Magistrate Judge, there is no need to obtain a second consent from the parties to proceeding before the undersigned Magistrate Judge.  *Contra, e.g.*, *Sell v. Conway*, No. 10–CV–6182, 2011 WL 5325978, at *1 (W.D.N.Y. Nov. 4, 2011) ("Where parties consent to the jurisdiction of a specifically-named magistrate judge, any subsequent disposition by another magistrate judge without the consent of the parties is improper and must be vacated.") (citing *Mendes Junior Int'l Co. v. M/V Sokai Maru*, 978 F.2d 920, 924 (5th Cir. 1992)) (other citations omitted).  "Where, however, [like here,] the 'plain language of the [consent form] indicates that the parties consent to have ***any*** [magistrate judge] preside in their case,' a later transfer to a second magistrate judge is not improper."  *Id.* (quoting *Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. App'x 35, 39–40 (5th Cir. Aug. 4, 2008) (per curiam) (emphasis added by *Sell* court)).  The form at question in *Hester*, from the Eastern District of Texas, similar to the form used by this Court, stated "that 'the parties in this case hereby voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in this case, including trial,

28), but, as explained in the October 18, 2012 Order (Doc. 22), while the motion to dismiss was filed first, the motion to remand raises the threshold issue of subject-matter jurisdiction and, accordingly, must be addressed first (*see id.* at 2 ("Absent federal jurisdiction, this Court lacks the power to decide [the] pending Motion to Dismiss, and must immediately remand this action to state court without reaching the question of whether Plaintiffs have stated cognizable claims against [the] Defendant[].") (citations omitted).

After careful consideration of the parties' briefing and the pleadings, and for the reasons discussed herein, the motion to remand (Doc. 18) is **GRANTED**, and this matter is **REMANDED** to the Circuit Court of Dallas County.

## Background

The plaintiffs filed their action in Dallas County Circuit Court on July 20, 2012. (*See* Doc. 1-1 at 3.)  A first amended complaint (*id.* at 62-84) was filed on August 29, 2012, prior to removal.

Focusing on the allegations of the first amended complaint (or the "complaint"), "[t]his lawsuit is centered around the operation of a paper manufacturing facility located in Selma, Alabama [ ] from which tons of hazardous substances, pollutants, contaminants, and other toxic and harmful materials are, and have for years been, continuously released into the environment."  (Doc. 1-1 at 62.)  According to the plaintiffs, all residents of Selma and its surrounding areas (*see id.*, ¶ 14), Defendant International Paper ("IP"), through its operation of the Selma plant, violated "laws

---

order the entry of a final judgment, and conduct all post-judgment proceedings.'"  *Id.* at 39; *compare id., with* Doc. 8.

intended to protect Plaintiffs from the effects of the Hazardous Substances,[2] Particulate Matter, and Noxious Odors, including without limitation" certain federal[3] and Alabama[4] statutes and regulations (*id.*, ¶ 22 (footnotes added)). The plaintiffs further contend that violation of these "laws and regulations constitute violations of duties imposed by law and intended to prevent harm to Plaintiffs and other persons similarly situated" (*id.*, ¶ 23), and the specific state-law causes of action asserted are: trespass (*see id.*, ¶¶ 39-45); public nuisance (*see id.*, ¶¶ 46-57); private nuisance (*see id.*, ¶¶ 58-66); negligence (*see id.*, ¶¶ 67-73); wantonness (*see id.*, ¶¶ 74-80); negligence per se (*see id.*, ¶¶ 81-88); and fraudulent suppression (*see id.*, ¶¶ 89-95).[5]

IP timely removed this matter to federal court, asserting that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Thus, IP contends that the plaintiffs' claims asserted pursuant to state law arise under federal law. (*See* Doc. 1 at 4-14.)

---

[2] This term is defined in the complaint to "include generally, without limitation" other defined terms as those terms are described in federal regulations. (*See id.*, ¶ 2.) For example, "Hazardous Substances" include "'Hazardous Chemicals,' as described in 29 CFR Part 1910 Subpart Z[.]" (*Id.*, ¶ 2.A.)

[3] Federal laws specifically listed include: the Resource Conservation and Recovery Act ("RCRA); the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"); the Superfund Amendment and Reauthorization Act ("SARA"); the Emergency Planning Community Right to Know Act ("EPCRA"); OSHA's Standard on Hazardous Waste Operations and Emergency Response ("HAZWOPER"); the Clean Air Act ("CAA"); the Clean Water Act ("CWA"); and the Solid Waste Disposal Act ("SWDA"). (*See id.*, ¶ 22.)

[4] State laws specifically listed include: the Alabama Wastes Management and Minimization Act; the Alabama Solid Waste Disposal Act; the Alabama Environmental Management Act; the Alabama Pollution Control Act; the Alabama Underground Storage Tank and Wellhead Protection Act. (*See id.*, ¶ 22.)

[5] Aside from Paragraph 22, the only other time a federal statute or regulation is cited in the complaint is under Count VI, for negligence per se. Paragraph 84 under that count provides, "The actions of Defendants constituted violations of laws intended to protect Plaintiffs, include without limitation the [ECPRA], and all of the other laws described above." (*Id.*)

**Discussion**

*I.     "Arising Under" Jurisdiction Generally*

"Congress has provided for removal of cases from state court to federal court when the plaintiff's complaint alleges a claim arising under federal law." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 472 (1998). "Generally the existence of federal-question jurisdiction is governed "by the 'well-pleaded complaint' rule, under which a suit arises under federal law *only* when the plaintiff's statement of his own cause of action shows that it is based on federal law." *Coffey v. Freeport-McMoRan Copper & Gold Inc.*, 623 F. Supp. 2d 1257, 1269 (W.D. Okla. 2009) (citations omitted and emphasis added) (further noting that a case neither arises under federal law by a plaintiff's anticipation of a federal defense nor by a defendant's assertion of one and that a plaintiff, as the "master of the claim," may prevent removal "by choosing not to plead a federal claim even if one is available"). But "[a] case [also] arises under federal law within the meaning of 28 U.S.C. § 1331 'if "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."'" *Bender v. Jordan*, 623 F.3d 1128, 1131 (D.C. Cir. 2010) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting, in turn, *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983))). Thus, this Court has jurisdiction over the plaintiffs' ostensibly state-law causes of action if "it is apparent that the federal questions overwhelmingly predominate." *Id.*; *see also Gulledge v. Gulledge*, Civil Action No. 10–0259–WS–M, 2010 WL 3528567, at *3 (S.D. Ala. Sept. 3, 2010) ("The law is clear that, even in the absence of a federally created cause of action, 'in limited circumstances, federal-question jurisdiction may be also be available

if a substantial, disputed, question of federal law is a necessary element of a state cause of action.'") (quoting *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998)).[6]

## II. Substantial Federal Question Doctrine.

"Even when a right of action is created by state law, *if the claim requires resolution of significant issues of federal law*, the case may arise under federal law for 28 U.S.C. § 1331 purposes." *Mims v. Arrow Fin. Servs., LLC*, ___ U.S. ___, 132 S. Ct. 740, 749 n.9 (2012) (citing *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)) (emphasis added). And "the question" for a court "is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *accord Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008) (further noting that "'*Grable* exemplifies' a 'slim category of cases'") (quoting *Empire Healthchoice*, 547 U.S. at 701).[7] Put somewhat differently, "[f]or federal courts to have jurisdiction, the state law

---

[6] In addition to the substantial federal question doctrine, which is the basis for IP's removal, the second of "[t]he Supreme Court[-]developed [ ] narrow exceptions to the well-pleaded complaint rule" is complete preemption, *Coffey*, 623 F. Supp. 2d at 1269, which "arises when Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character[,]'" *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)); *see id.* (noting that these select claims "so forcibly and completely displace[] state law that [a] plaintiff's cause of action is either wholly federal or nothing at all," which thus converts "what otherwise appear[ to be] merely [ ] state law claim[s into] claim[s] 'arising under' federal law for jurisdictional purposes") (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008)).

[7] As explained by the court in *Sowell v. International Brotherhood of Teamsters*, Civil Action No. H–09–1739, 2009 WL 4255556 (S.D. Tex. Nov. 24, 2009),

> [i]n *Grable,* the court resolved a split within the courts of appeals by recognizing federal jurisdiction over a "rare state quiet title action that involves contested issues of federal law," namely, whether the IRS's sale of real property to satisfy the plaintiff's tax delinquency was invalid because the IRS gave to the plaintiff actual notice of the sale by certified mail rather than by personal service, which

5

claim must *turn on* an 'actually disputed and substantial' issue of federal law." *Bender*, 623 F.3d at 1130 (quoting *Grable*, 545 U.S. at 314) (emphasis added). Federal jurisdiction must, further, "be 'consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.'" *Id.* (quoting *Grable*, 545 U.S. at 313–14).

> The Court has said that this depends on such factors as the strength of the federal interest in a federal forum to resolve questions of federal law and

---

> was specified in the federal statute. The whole case depended upon that "dispositive and disputed federal issue at the heart of the state-law title claim," the Court observed, and a finding of federal jurisdiction would "not materially affect, or threaten to affect, the normal currents of litigation." In finding federal jurisdiction under 28 U.S.C. § 1331 in this "rare" case, the Court rejected the concept of treating "'federal issue' as a password opening federal courts to any state action embracing a point of federal law."

*Id.* at *4 (internal citations omitted). The year after handing down *Gable*, the Supreme Court limited it, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). And, as explained by the court in *Giles v. Chicago Drum, Inc.*, 631 F. Supp. 2d 981 (N.D. Ill. 2009),

> [i]n that case, Empire Healthchoice, the health insurer for federal employees, sued to recover health insurance benefits it had paid; the insurance beneficiary had recovered damages for his injuries in a state court tort action, but then refused to reimburse the employer as required by the terms of the insurance agreement. The insurer's claim arose under state contract law, but the insurer noted that the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, and the FEHBA was a necessary element of the insurer's claim. The Court, however, rejected any analogy to *Grable*, emphasizing "the special and small category" to which it belonged. [547 U.S. at 699]. The Court noted, first, that the meaning of the federal tax provision in *Grable* was the only contested issue in that case. Further, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases." *Id.* at 700-01 (quotations and citations omitted). Empire's reimbursement claim, on the other hand, was "fact-bound and situation-specific," with the parties haggling over the existence of overcharges and duplicative charges by the insurer. *Id.* at 701. Also in contrast to *Grable*, the claim in *Empire Healthchoice* was not triggered "by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court." *Id.* at 700. The ultimate issue was not a discrete matter of federal law, but rather the share of the settlement owed to Empire under the insurance contract. *Id.* The Court saw no reason why the state court was not competent to apply whatever federal law was required to resolve the amount of the insurer's reimbursement claim.

*Id.* at 985 (some internal citations modified).

6

>   whether federal jurisdiction would "materially affect" the "normal currents of litigation." [*Grable*, 545 U.S.] at 315, 319. Federal jurisdiction is favored in cases that present "a nearly 'pure issue of law' . . . 'that could be settled once and for all and thereafter would govern numerous . . . cases.'" *Empire Helathchoice*, 547 U.S. at 700 (quoting RICHARD H. FALLON, JR., DANIEL J. MELTZER, & DANIEL L. SHAPIRO, HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 65 (2005 Supp.)). Conversely, federal jurisdiction is disfavored for cases that are "fact-bound and situation-specific" or which involve substantial questions of state as well as federal law. *Empire Healthchoice*, 547 U.S. at 701.

*Id.* (some citations modified). And "[t]he Court's opinions in this area call on the federal courts to make predictive judgments about, for example, whether jurisdiction over such actions . . . will 'materially affect, or threaten to affect, the normal currents of litigation,' presumably by leading to a wave of new filings in federal court." *Id.* (quoting *Grable*, 545 U.S. at 319).[8]

Proving that this matter fits into the "slim category of cases" that trigger this Court's "arising under" jurisdiction because a substantial federal question arises out of what are otherwise purely state-law claims is, of course, up to IP, which, as the removing defendant, "bears the burden of establishing the existence of federal

---

[8] In *Bender*, like in *Grable*, the court was faced with "a nearly pure issue of federal law, and none of the other relevant factors weigh[ed] against federal jurisdiction." *Id.* There, the agreements alleged to have been breached under state law were "creatures of federal law, in the sense of being intended to implement [a] scheme designed by [federal law]." *Id.* (citations committed); *see also id.* at 1131 (noting that, there, "the parties' legal duties turn[ed] almost entirely on the proper interpretation of that regulation. The federal interest in a federal forum for [that] case [was] substantial. At stake [was] the interpretation of a federal regulation that governs the conduct of a federal agency—the Office of Thrift Supervision—and federally chartered savings associations. By contrast, there [was] no discernable state interest in a state forum."); *compare id.*, *with Davis v. GMAC Mortgage LLC*, No. 4:11–CV–95 (CDL), 2012 WL 860389 (M.D. Ga. Mar. 13, 2012) (finding substantial federal question jurisdiction where a federal regulation implicated in a state-law claim "is an integral part of the federal regulatory scheme for VA guaranteed loans" and that, moreover, "the transaction from which Plaintiffs' claims arise would not have occurred except for the existence of the VA guaranteed loan program that was subject to the VA regulatory scheme that included the regulation in question[,]"and further finding the case "distinguishable from those cases where non-mandatory statutory language is simply substituted into a contract as a contract term") (citing *Bender*, 623 F.3d at 1130-31).

jurisdiction." *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction.")); *cf. University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

## Analysis

As indicated above, the ideal vehicle for finding federal-question/"arising under" jurisdiction pursuant to the substantial federal question doctrine is a case in which the state-law claims will be resolved by deciding a disputed federal issue that is discrete and purely legal and, if resolved, moreover, would have wide precedential value.[9] Facts, however, muck up the works. That is, to the extent the federal issue in a case is fact-bound—requiring a court apply federal law to the specific facts of a case to decide the state-law claims—it is less likely the case will fit into the small category of

---

[9] If resolution of the federal issue will have no precedential effect, "the federal interest is marginal at best." *USPPS, Ltd. v. Avery Dennison Corp.*, 676 F.3d 1341, 1353 (5th Cir. 2012) (in a malpractice action, in which "determining whether [the plaintiff] likely could have obtained a patent absent defendants' allegedly unlawful acts *[did] not resolve [the] matter*," but, rather, was "only one piece of the causation element of [the] claim[, ] federal court jurisdiction [was] neither necessary nor appropriate because the patent law issue presented [was] not substantial by any measure") (citing, *inter alia*, *Empire Healthchoice*, 547 U.S. at 701; *Adventure Outdoors*, 552 F.3d at 1301 ("state court interpretation of the gun statutes . . . will not have precedential effect in the federal system")) (emphasis added).

cases that may be brought into this Court because they raise a substantial federal question.

This case is not that ideal vehicle. Here, the plaintiffs assert generalized violations of a list of federal and state statutes and regulations (*see* Doc. 1-1, first amend. compl., ¶ 22)—provided as examples of "laws intended to protect Plaintiffs" (*id.*)—to allege that IP and the individual defendants have violated "duties imposed by law and intended to prevent harm to" the plaintiffs and others. (*Id.*, ¶ 23.) As to their laundry list of just federal laws, the plaintiffs have not raised an issue concerning the construction or interpretation of any of those laws. IP, likewise, has failed to show that the state-law claims in the complaint turn on an actually disputed and substantial issue of federal law. At most, what has shown is: (1), to the extent a violation of federal law is an element of an asserted state-law claim, a state court may have to apply federal law in deciding that claim—something a state court is more than competent to do—or (2), IP may raise its compliance with federal regulations as a defense to the plaintiffs' state-law claims. As will be further explained below, neither confers "arising under" jurisdiction pursuant to the substantial federal question doctrine.

## I. Resolution of the state-law claim must turn on an interpretation of disputed federal law.

"'What [the Supreme Court's opinions in] *Grable* and *Empire Healthchoice Assurance* teach is that something more is required for a federal interest to be "substantial" than the mere fact that the state court will be asked to follow federal standards'—that is, apply federal law—'in the context of adjudicating a state law claim.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, Civil Action Nos. H–11–4311; H–11–4629, 2012 WL 3599486, at *11 (S.D. Tex. Aug. 20, 2012) (quoting *RX.com, Inc. v.*

9

*O'Quinn*, 766 F. Supp. 2d 790, 796 (S.D. Tex. 2011)).[10] Indeed, as noted in *Goffney v. Bank of Am., N.A.*, ___ F. Supp. 2d ___, 2012 WL 4127952 (S.D. Tex. Sept. 17, 2012), where no substantial federal question was found, a state "court may very well need to apply federal law to aspects of [the] case, and the state courts are competent to do so[,]" *id.* at *5. Thus, the "something more" is not the mere application of federal law.[11]

---

[10] At issue there was the validity of Renewable Identification Numbers ("RINs")—established by the EPA to facilitate compliance with the renewable fuel program authorized under a 2005 amendment to the Clean Air Act, *see id.* at *1-2—bought and sold by OceanConnect in the secondary market and already determined by the EPA to be fraudulently generated and invalid, *see id.* at *2. OceanConnect was sued in state court in Texas by Vinmar and Vitol (which together purchased 7.6 million RINs from OceanConnect and resold them to other companies) for breach of contract, breach of warranties, and rescission. *See id.* OceanConnect then removed the actions, and while Vinmar did not challenge federal-court jurisdiction, Vitol moved for remand, arguing that the claims did not require resolution of a substantial federal question. *See id.* And the court held that

> [t]hat OceanConnect may have to prove in state court that the RINs were invalid under federal regulations does not establish a substantial federal interest. To hold otherwise would mean that every case involving an allegedly invalid RIN presents a substantial federal question and triggers federal jurisdiction. "[A] state-law claim can involve federal subject matter without involving a substantial federal issue." To the extent that federal law is applicable, it is "only tangentially relevant to an element of a state [contract or warranty] claim."

*Id.* at *11 (quoting, respectively, *Windle v. Synthes USA Prods., LLC*, Civ. A. No. 3:11–CV–2591–D, 2012 WL 1252550, at *7 (N.D. Tex. Apr. 13, 2012); *Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008)).

[11] The "something more" is also not "[t]he mere presence of a federally regulated defendant[, which] does not of itself raise a substantial federal question[,]" *Cornelius v. U.S. Bank Nat'l Ass'n*, 452 Fed. App'x 863, 865-66 (11th Cir. Nov. 29, 2011) (per curiam) (citing *First Fed. Sav. & Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983)) or a mere reference to federal law, but no requirement that the court "even [ ] interpret[]" federal law, *Madzimoyo v. The Bank of N.Y. Mellon Trust Co., N.A.*, 440 Fed. App'x 728, 730-31 (11th Cir. Sept. 7, 2011) (per curiam) ("vacat[ing] the judgment of the district court and remand[ing] with instructions that the district court remand the proceedings to the state court" where the plaintiff's "petition referenced federal laws in passing, [but] none of his causes of action relied on even the interpretation of federal law"); *see also Broussard v. LCS Corr. Servs., Inc.*, Civil Action No. 6:10–cv–0155, 2010 WL 2710642, at *4 (W.D. La. July 6, 2010) (noting that, "[i]n the Fifth Circuit, courts have[ ] held . . . that there was no federal-question jurisdiction in a case alleging that the defendant's facility violated federal environmental regulations as well as state and local regulations" (citing *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002)) and that "[i]t has [also] been held that allegations of OSHA and EPA violations do not automatically confer federal question jurisdiction when the action was not brought to enforce those regulations, there was no special need for federal expertise or uniformity in adjudicating the action, and finding

Instead, it is a requirement that the state-law claims "turn on" the resolution of a disputed area of federal law. *See Cantwell v. Deutsche Bank Sec., Inc.*, No. Civ.A. 305CV1378-D, 2005 WL 2296049, at *2 (N.D. Tex. Sept. 21, 2005) ("A federal question is sufficiently substantial to support federal jurisdiction if 'the vindication of a right under state law necessarily ***turn[s] on some construction of federal law***.'") (quoting *Franchise Tax Bd.*, 463 U.S. at 9) (emphasis added); *accord Mims*, 132 S. Ct. at 749 n.9; *Bender*, 623 F.3d at 1130. For example, in *Adventure Outdoors*, the Eleventh Circuit found that the plaintiffs' state law claims of defamation based on the defendants' statements that the plaintiff had violated federal gun laws presented a contested federal issue (whether the defendants' statements concerning federal law were false), *see* 552 F.3d at 1298-99, but concluded that no substantial federal question was present because (1) there was ***no dispute over the meaning*** of the federal law at issue, *see id.* at 1299; (2) the ***meaning*** of the federal law at issue was ***clear***, *see id.* at 1300; (3) state court application of federal criminal law in the civil context did not pose a serious threat to the federal interest of uniformity and consistency of federal criminal law, *see id.*; and (4) the federal legal issue was ***not dispositive*** of the case because factual issues remained no matter how the legal issue was resolved, *see id.* at 1301; *see also Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236 (10th Cir. 2006) (relied on by IP (*see* Doc. 27 at 14)) ("As an initial matter, it is clear that the federal question is actually disputed. In fact, ***construction of the federal land grant appears to be the only legal or factual issue contested in the case***.") (emphasis

---

federal-court jurisdiction would undermine the division of labor between state and federal courts" (citing *Glanton v. Harrah's Entm't, Inc.*, 297 Fed. App'x 685, 687 (9th Cir. Oct. 21, 2008) (mem.))); *Williams v. EDCare Mgmt., Inc.*, Civil Action No. 1:08-CV-278, 2008 WL 4755744, at *6 (E.D. Tex. Oct. 28, 2008) ("[A] plaintiff's assertion that a defendant violated a federal regulation may not be enough to confer federal question jurisdiction, where the bulk of the plaintiff's claims are based on state law theories of recovery.") (citing *MSOF Corp.*, 295 F.3d at 490).

11

added); *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. Hardesty Sand & Gravel*, No. 2:11–CV–02278 JAM–JFM, 2012 WL 639344, at *4 (E.D. Cal. Feb. 24, 2012) (a "general argument that state laws should not conflict with federal laws" does not equate to a "'sufficiently real and substantial' controvers[y] respecting the *construction and effect* of [a federal environmental statute such as, there,] the CAA" where a complaint "does not raise or depend on the *resolution* of a substantial federal issue" under a federal regulation) (citing *Grable*, 545 U.S. at 316) (emphasis added).

IP relies on another, pre-*Grable*, decision from the Eleventh Circuit in its brief, *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), which is used to support IP's contention that because "'violation of the federal [laws] is an essential element of the Plaintiffs' cause[e] of action[,]'" (Doc. 27 at 9 (quoting *Ayres*, 234 F.3d at 518), the complaint "raises actually stated federal issues" (*id.*; *see also id.* at 10 ("That the [complaint] satisfies this test is evident from its plan text . . . —it expressly makes a violation of EPCRA an essential element of Plaintiffs' negligence per se and fraudulent suppression claims. And it expressly makes violation of the CAA and the CWA, among other federal laws, an essential element of Plaintiffs' wantonness and negligence claims." (internal citations omitted).) The underlying federal issue presented by the state-law claim in *Ayres* was deemed substantial, however, because resolution of the state-law claim turned on determining whether a provision of one federal statute created a duty of disclosure and whether the failure to disclose under that federal statute constituted liability under a separate federal statute. Thus, to decide the state-law claim, a court would "need to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law." *Adventure Outdoors*, 552 F.3d at 1302. This makes *Ayres* an outlier.

As explained by the court in *Donaldson v. GMAC Mortgage, LLC*, No. 4:09-CV-117 (CDL), 2010 WL 381838 (M.D. Ga. Jan. 26, 2010):

> In *Ayres*, a group of plaintiffs brought claims under Georgia RICO, alleging mail fraud and wire fraud as the sole predicate offenses. The key issue in that case was whether a provision of the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118 ("Safety Act"), created a duty of disclosure and whether the failure to make disclosures under the Safety Act constituted federal mail and wire fraud. Therefore, the Eleventh Circuit concluded that the case raised a substantial federal question because the plaintiffs' entire case depended on "interpretation of the federal mail and wire fraud statutes *and* their interaction with" the Safety Act. *Ayres*, 234 F.3d at 518-19 (emphasis added).
>
> The *Ayres* court emphasized that it was not holding that federal question jurisdiction exists every time a state RICO case raises federal mail and wire fraud as predicate acts. *Id.* at 519 & n.10. Rather, the "need to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law" made the federal question in Ayres substantial. *Adventure Outdoors*, 552 F.3d at 1302; *accord Ayres*, 234 F.3d at 519. In other words, proof of the Georgia RICO claim in *Ayres* required not just proof of both federal mail and wire fraud as predicate acts but also a showing that the alleged federal mail and wire fraud violations involved a substantial federal question. *Ayres*, 234 F.3d at 520 & n.12. The *Ayres* court specifically distinguished the case before it from actions involving only state law RICO claims predicated upon federal mail and wire fraud—with no need to construe the interplay with another federal law—because "[n]othing in those cases suggests a federal question of the magnitude involved" when there are *two levels of federal law at issue*. *Id.* In *Adventure Outdoors*, the Eleventh Circuit recognized the limited nature of its holding in *Ayres*, noting that *Ayres* "involved two levels of federal questions" and required the court "to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law." *Adventure Outdoors*, 552 F.3d at 1302.

*Id.* at *4-5 (second emphasis added); *see also Mulholland v. Subaru of Am., Inc.*, 620 F. Supp. 2d 1261, 1266 (D. Colo. 2009) ("Although the *Ayres* Court indicated that it was basing its conferral of jurisdiction on the fact that a federal issue was an element of the state RICO claim, it also noted that not 'every state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud

13

statutes establishes federal question jurisdiction.' *Id.* [at 519.] Rather, the Eleventh Circuit concluded that the fact that the case dealt with the interaction between two federal statutes made the case 'one of those exceptional cases requiring that we decide a federal question substantial enough to confer federal question jurisdiction.' *Id.*") (internal citation and quotation marks omitted).

Thus, contrary to IP's belief, *Ayres* cannot be read to mean that merely because a violation of federal law is an essential element of a state-law claim, the complaint raises a substantial federal question. Instead, the state-law claim in *Ayres* **turned on** the interaction between two disparate federal statutes.

Moving on, IP dedicates more than five pages of its opposition to explaining the federal "regulatory framework" that governs its mill in Selma (*see* Doc. 27 at 2-7)—it cannot be argued that federal environmental law is not complex—and contends that "[p]roperly resolving Plaintiffs' allegations that Defendants violated [ ] federal laws will entail interpreting the laws' meaning, scope, and effect" (*id.* at 10; *accord id.* at 17). The plaintiffs' complaint, however, does not place in dispute the meaning of any provisions of federal law,[12] and IP has not shown that a state court will be called upon to do more than apply a settled federal framework to the facts of this case. Further, while there may be—arguably (*see infra*)—a federal interest in the uniform application of federal

---

[12] As another example, in addressing a litigant's entitlement to "contribution or indemnity in connection with [a] CERCLA-related damages award[,]" the court in *Mathes v. Vulcan Materials Co.*, Civil No. 2006-229, 2009 WL 2614710 (D.V.I. Aug. 21, 2009), determined that the claim failed to "raise[] a substantial and disputed federal issue warranting federal jurisdiction under *Grable*" because, "[w]hile the [ ] right to relief . . . may be limited by CERCLA, the meaning of CERCLA's provisions has not been placed in active dispute by the [ ] complaint[,]" *id.* at *9 ("Thus, while the Commissioner's territorial-law claims bear some relation to federal issues in the sense that those claims arise out of a ***federally-supervised*** contaminated site, they do not raise an actually-disputed and substantial issue concerning CERCLA.") (emphasis added).

environmental law, the speculative harms conjured up by IP regarding uniformity and state-court interpretation of federal law (*see* Doc. 27 at 18-25) focus on choice of law, and IP has not shown that any argument in that regard it would present to this Court, as it decides the state-law claims, could not also be made to the state court.[13]

Further, even if resolution of one of the plaintiffs' state-law claims required a court to resort solely to federal law, which does not appear to be the case here, that alone would not be enough to raise a substantial federal question. For example, in regard to the conspiracy claims presented in *Giles v. Chicago Drum, Inc.*, 631 F. Supp. 2d 981 (N.D. Ill. 2009), the court was forced to assume that a federal statute—the Resource Conservation and Recovery Act (the "RCRA")—was "the only basis for those claims" because an applicable state law was not in effect for a portion of the applicable time period, *id.* at 988-89 (noting that, "[a]t first blush, it appears from the face of the complaint that Plaintiffs have stated an alternative basis for the resolution of their claim-conspiracy to violate provisions of [the Illinois Environmental Protection Act]" and that "some authority concludes that remand is appropriate where plaintiff makes an alternative argument for relief that does not require the interpretation of a federal statute") (citation omitted); *see id.* at 989 ("[U]nder Plaintiffs' theory, the processing of hazardous waste constitutes both the allegedly agreed-to unlawful conduct and the tortious act in furtherance of the agreement. It may, thus, indeed be necessary to resort

---

[13] IP also contends that the ability of a federal agency to vindicate its actions in federal court, a factor central to *Grable*'s substantiality analysis, applies in this case. While the plaintiffs may be contending that IP has not complied with laws, some of which are enforced by the EPA, the plaintiffs have not directly challenged the actions of the EPA. Instead, as discussed further, below, the plaintiffs' lawsuit may be properly classified as a citizens' suit, something expressly reserved by the savings clauses in many of the federal statutes cited in their complaint.

to RCRA in deciding Plaintiffs' conspiracy claim."). The court, nevertheless, found no jurisdiction under a substantial federal question theory, concluding that

> resolution of Plaintiffs' conspiracy claims does not require the interpretation of a substantial issue of federal law.  The meaning of certain RCRA terms governing the lawfulness of Defendants' conduct—such terms as "hazardous waste," "empty" containers, and "disposal," for example—may well be hotly contested; but the application of these provisions to Defendants' conduct differs little from the kind of "fact-specific application of rules" that *Empire Healthchoice* and *Bennett* [*v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007),] found not to merit federal question jurisdiction.  547 U.S. at 701, 484 F.3d at 910.  Plaintiffs' claims do not hinge on the interpretation of a single federal statute, as in *Grable*, but rather involve fact-bound issues such as when and how the customer Defendants shipped waste materials to Acme, how Acme handled these materials, the levels of exposure experienced by individual Plaintiffs, and causation of their alleged injuries.  In short, the conduct at issue in this case does not present the kind of "pure issue of law" present in *Grable* "that could be settled once and for all" with a decision by this court.  *Empire Healthchoice*, 547 U.S. at 701.  It does not belong to the "special and small" category of cases contemplated by *Grable*.

*Id.* at 989-90 (some citations modified).

> II.    *Asserting compliance with federal regulations is a defense to state-law claims and does not raise a substantial federal question.*

As one example, in the introduction to its opposition to the remand motion, IP asserts that, according to its reading of the amended complaint, the defendants are alleged to have "violated several federal laws that comprehensively regulate environmental emissions and disclosures[.]"  (Doc. 27 at 1.)  IP further asserts that it "has complied with those regulations by, *inter alia*, obtaining permits from federal and state regulators expressly authorizing the very conduct that Plaintiffs now challenge under state law" and that, "[i]n essence, Plaintiffs seek to use a state court lawsuit to undermine Congress's intricate [regulatory] frameworks, [and, thus, one] critical federal issue presented here [is] the scope and effect of federal environmental laws[.]"  (*Id.*)  A fair reading of this statement—and others—is that IP believes, one, its compliance with

16

federal and state regulations is a defense to the state-law tort claims asserted in the complaint and, two, the plaintiff's state-law tort claims present a "critical" or, put slightly differently, *substantial* "federal issue" because those claims challenge the adequacy of and/or attempt "to undermine [federal regulatory] frameworks." However, in *Gilbert v. Synagro Central, LLC*, No. 1:08-CV-1460, 2008 WL 4542248 (M.D. Pa. Oct. 9, 2008), where the defendants claimed that the complaint "'directly challenge[d] the adequacy of EPA regulations' and thereby 'necessarily require[d] th[e] court to resolve a substantive [sic] federal issue,'" *id.* at *3 (record citation omitted), the court noted,

> A potential federal defense is not a necessary element of a common-law tort claim. Calling something by a different name does not mean that it no longer stinks. Proof of these common-law tort claims does not necessarily involve elements of federal law as an essential component. Defendants merely suggest that they might raise compliance with federal regulations as a defense, but this possible defense does not give rise to federal question jurisdiction[.]

*Id.* at *3 (citing *Franchise Tax Bd. of Cal.*, 463 U.S. at 10); *see also Wyatt v. Sussex Surry, LLC*, 482 F. Supp. 2d 740, 745 (E.D. Va. 2007) (cited by the plaintiffs) (in which the defendants advanced, first, that resolution of the plaintiffs' claims "necessarily implicate[d]" a federal issue—"compliance with 40 C.F.R. Part 503, which regulates the use and disposal of sewage sludge"—and, further, that the plaintiffs' claims "threaten[ed] to 'upend federally prescribed practices[,]'" the court found no substantial federal question, noting that "alleged compliance with state or federal regulations constitute[d] an affirmative defense, not a part of the plaintiff's complaint" and that, there, the elements of the plaintiffs' "nuisance, trespass, and negligence claims [were] well-settled under Virginia common law"; thus, [p]roof of the[] claims do not necessarily involve disputed elements of federal law as an essential component"); *Dunlap v. G & L Holding*

17

*Group, Inc.*, 381 F.3d 1285, 1288-92 (11th Cir. 2004) (reversing summary judgment and directing that matter be remanded to state court after finding that the federal regulation at issue did not raise a substantial question of federal law because the asserted state law claims did "not require proof of violation or an interpretation of federal law[—i]ndeed, the only potential issue involving federal law is whether [the plaintiff's] employment contract complied with the terms of 12 C.F.R. § 563.39[, which] would be raised only as a defense after [the plaintiff] had successfully established the existence of a valid contract under state law); *Hester v. Florida Capital Group., Inc.*, No. 8:11–cv–791–T–24 TGW, 2011 WL 2580330, at *4 (M.D. Fla. June 29, 2011) (applying *Dunlap* to find no substantial federal question); *Sowell*, 2009 WL 4255556, at *5 ("Defendants' defensive assertion of federal law does not confer jurisdiction on this Court.").

    III.    *Savings Clauses.*

Finally, it is significant that several of the federal statutes cited by the plaintiffs— including CERCLA, the RCRA, the CAA, and the CWA—contain savings clauses, under which Congress has preserved "parties' rights arising under state law." *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490-91 (5th Cir. 2002) (in which the "[t]he plaintiffs' complaint allege[d] negligent and strict liability torts under Louisiana law" and "only reference[d] federal law is an allegation that the PPI facility was maintained in violation of federal regulations as well as in violation of state and local regulations," the Fifth Circuit rejected the defendants' argument that the complaint actually sought relief under CERCLA and noted that, "[i]n enacting CERCLA, Congress expressly disclaimed an intent to preempt state tort liability for the release of hazardous substances[,]" citing 42 U.S.C. § 9652(d), CERCLA's general savings clause, which, in part, provides, "Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any

person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants."); *see also PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617 (7th Cir.1998) (noting that the purpose of 42 U.S.C. § 9652(d) "is to preserve to victims of toxic wastes the other remedies they may have under federal or state law").[14]

These savings clauses undercut a theme expressed throughout IP's opposition—an opposition solely grounded in the theory that the plaintiffs' complaint raises a substantial federal question—which is, that the plaintiffs should not be allowed "to use a state court lawsuit to undermine Congress's intricate frameworks . . . for protecting human health and the environment" (Doc. 27 at 1), which, according to IP, are "carefully calibrated" and "cannot serve their intended purposes if they are applied inconsistently" by state courts (*id.* at 18; *see also id.* at 18-19 ("If courts are permitted to use 'vague' tort standards to 'scuttle the nation's carefully created system for balancing regulated emissions 'against the need for clean air,' the 'result would be a balkanization of clean air regulations and a confused patchwork of standards, to the detriment of industry and the environment alike.'") (quoting *North Carolina, ex rel. Cooper v. Tennessee Valley Auth.*, 615 F.3d 291, 296 (4th Cir. 2010)).)

And the presence of savings clauses has been pointed out in other cases finding no substantial federal question jurisdiction. For example, in *Gilbert*, discussed *supra*, the court interpreted the defendants' substantial federal question argument as "[a] potential federal defense" and, thus, "not a necessary element of a common-law tort claim." 2008

---

[14] Similar to CERCLA, the Supreme Court has "held that the RCRA savings clause, 42 U.S.C. § 6972(f), which allows persons to 'seek . . . relief' that they may have 'under any statute or common law,' [ ] preserves causes of action under state law." *Abreu v. United States*, 468 F.3d 20, 31 (1st Cir. 2006) (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487 (1996)).

WL 4542248, at *3.  The court then scolded the defendants by pointing out that their argument "reeks of insincerity given the Clean Water Act's 'saving clause' already pointed out to these Defendants in substantially similar litigation in the Eastern District of Virginia."  *Id.* (citing *Wyatt*, 482 F. Supp. 2d at 745 ("Even if Defendants were able to prove compliance with all state and federal regulations, Plaintiffs could still set forth valid claims upon which relief could be granted because the federal Clean Water Act contains a 'savings clause,' which has been construed by the Supreme Court to permit rather than preclude state common-law claims." (citing, in turn, *International Paper Co. v. Ouelette*, 749 U.S. 481 (1987)))).

Accordingly, the presence of savings clauses in many of the cited federal statutes further supports allowing the purely state-law claims to proceed in state court.  Their inclusion by Congress, moreover, speaks to its decision regarding the "balance of federal and state judicial responsibilities[,]" *Grable*, 545 U.S. at 314, which, as *Grable* teaches, is something "a federal forum [should not] disturb[,]" *see id.*

## Conclusion

For the reasons discussed at length herein, this Court lacks subject-matter jurisdiction.  Therefore, the motion to remand (Doc. 18) is **GRANTED**, and the Clerk is **DIRECTED** to **REMAND** this matter to the Circuit Court of Dallas County, Alabama and **CLOSE** this case.

**DONE and ORDERED** this the 13th day of December, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**
